J-S41031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: I.H.W.C., A MINOR CHILD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.Z., MOTHER | |
| | No. 581 EDA 2014 |

Appeal from the Decree December 27, 2013
In the Court of Common Pleas of Northampton County
Orphans' Court at No(s): 2013-0074

BEFORE:  BOWES, J., DONOHUE, J., and MUNDY, J.

MEMORANDUM BY MUNDY, J.:                    **FILED AUGUST 26, 2014**

Appellant, B.Z. (Mother), appeals from the December 27, 2013 decree involuntarily terminating her parental rights to her minor son, I.H.W.C.[1] After careful review, we affirm.[2]

The relevant facts and procedural history of this case may be summarized as follows.  I.H.W.C. was born in August 2012, and was placed in the custody of the Northampton County Division of Children, Youth and

_____

[1] On January 16, 2014, the orphans' court entered a decree involuntarily terminating the parental rights of I.H.W.C.'s natural father, J.C. (Father). **See** Final Decree, 1/16/14, at 1-2.  Father is not a party to this appeal.

[2] The *Guardian Ad Litem* also filed a brief in this matter, wherein it agrees with CYF that, "[t]he [orphans'] court did not abuse its discretion in terminating the parental rights of [M]other[,]" and "that termination of parental rights is in the best interests of I.H.W.C." *Guardian Ad Litem* Brief at 5, 9.

Families (CYF) three days after birth due to Mother exhibiting severe mental health issues and being involuntarily committed for mental health treatment. N.T., 12/17/13, at 23; *see also* Order for Emergency Protective Custody, 8/10/12, at ¶ 7. On September 28, 2012, the orphans' court adjudicated I.H.W.C. dependent. *See* Order of Adjudication, 9/28/12. Thereafter, the orphans' court established a permanency goal of reunification and outlined a series of family service plan (FSP) objectives for Mother. Specifically, Mother was ordered to cooperate with mental health services; to participate in and successfully complete psychological evaluations and follow through with all recommendations; to cooperate with parenting education and life skills training; and to maintain a stable residence for at least six months. Permanency Plan/Court Directive and Interim Order, 9/28/12. Additionally, Mother was granted supervised visitation of I.H.W.C. *See id*.; N.T., 12/17/13, at 23.

On October 31, 2012, Mother's visitation rights were suspended when Mother became extremely volatile with several Sheriff's deputies during one of her supervised visits with I.H.W.C. N.T., 12/17/13, at 23-24. The orphans' court directed Mother to obtain a psychological and psychiatric evaluation, and precluded contact with I.H.W.C. until deemed stable by a mental health professional. *See* Final Decree, 12/27/13, at ¶ 4. The record reflects that Mother failed to complete a psychological or psychiatric examination, and she has never provided verification of mental health

- 2 -

treatment. *Id.* at ¶ 6; *see also* N.T., 12/17/13, at 24-25. Furthermore, Mother has not maintained a stable residence. N.T., 12/17/13, at 24. In addition, although represented by counsel in I.H.W.C.'s dependency matter, Mother failed to attend the adjudication and permanency review hearings. *Id.*

On October 18, 2013, CYF filed a petition to involuntarily terminate Mother's parental rights to I.H.W.C. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On December 17, 2013, the orphans' court held a termination hearing, which Mother did not attend. Mother, who was represented by counsel during said hearing, did not present any evidence. CYF made an offer of proof during the hearing, and introduced the juvenile court record in part, to which Mother's counsel did not object. *See* N.T., 12/17/13, at 23-26. CYF did not present testimonial evidence. Thereafter, on December 27, 2013, the orphans' court entered a decree involuntarily terminating Mother's parental rights to I.H.W.C. pursuant to Section 2511(a)(1), (5), and (b).[3] This timely appeal followed on January 27, 2014.[4]

---

[3] The record reflects that the Final Decree involuntarily terminating Mother's parental rights to I.H.W.C. was signed by the orphans' court on December 20, 2013, but filed on December 27, 2013. Thereafter, on December 30, 2013, the orphan's court filed an order indicating notice of the entry of said decree on the record. *See* Orphans' Court Order, 12/30/13.

[4] Mother and the orphans' court have complied with Pa.R.A.P. 1925.

On appeal, Mother raises the following issue for our review.

> A. Should Mother's rights be terminated when she failed to appear for proceedings because she feared [] Father and when [CYF] stopped her visits very early in the proceeding?

Mother's Brief at 4.

Preliminarily, we note that in its February 19, 2014 Rule 1925(a) opinion, the orphans' court concludes that Mother's issues on appeal are waived because they "have never been contested of record." Orphans' Court Opinion, 2/19/14, at 1. Upon review, we decline to find waiver in this instance, as Mother was represented by counsel, Robert Glazer, Esquire (Attorney Glazer), during the termination proceedings, and Attorney Glazer stated on the record that Mother contests the termination of her parental rights to I.H.W.C.. *See* N.T., 12/17/13, at 26-27. Accordingly, we now turn to the merits of Mother's claim.

We begin by noting our well-settled standard and scope of review.

> When reviewing a decree entered by the [trial] court [regarding a petition to terminate parental rights], this Court must determine whether the record is free from legal error and if the [trial] court's factual findings are supported by the evidence. Because the [trial] court sits as the fact-finder, it determines the credibility of witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> In other words, [i]n cases involving [the] termination of parental rights, our scope of review is broad. All of the evidence, as well as the trial court's factual and legal determinations, are to be considered. However, our standard of review is

- 4 -

> limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child. We have always been deferential to the trial court as the fact finder, as the determiner of the credibility of witnesses, and as the sole and final arbiter of all conflicts in the evidence.

*In re E.M.I.*, 57 A.3d 1278, 1284 (Pa. Super. 2012) (citations omitted).

"[W]here the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result." *In re M.G.*, 855 A.2d 68, 73 (Pa. Super. 2004) (citations omitted). Moreover, "we may uphold a termination decision if any proper basis exists for the result reached." *In re B.C.*, 36 A.3d 601, 606 (Pa. Super. 2012).

The Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, controls termination of parental rights proceedings. *See* 23 Pa.C.S.A. § 2511; *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). Specifically, Section 2511 requires the trial court to engage in a bifurcated process before terminating parental rights. *Id.*

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the

- 5 -

needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re Adoption of J.M.*, 991 A.2d 321, 323 (Pa. Super. 2010) (citation omitted). Moreover, this Court need only agree with any one subsection of Section 2511(a) in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Instantly, we proceed to address the termination of Mother's parental rights to I.H.W.C. under Sections 2511(a)(1) and (b), which provide as follows.

**§ 2511. Grounds for involuntary termination.**

**(a) General rule. —** The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

…

**(b) Other considerations. —** The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

> With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

Upon careful review of the record, we conclude that Mother's conduct warranted termination pursuant to Section 2511(a)(1). As discussed, this Court has long recognized that parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child **or** fails to perform parental duties. *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004). We have described "parental duties," as set forth in Section 2511(a)(1), as follows.

> Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty[,] which requires affirmative performance.
>
> …
>
> [T]his affirmative parental duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

*In re E.M.*, 908 A.2d 297, 304-306 (Pa. Super. 2006) (citation omitted).

Herein, the record reflects that Mother evidenced a settled purpose of relinquishing parental claim to I.H.W.C. or failed to perform her parental duties for a period in excess of six months immediately preceding the filing of the termination petition. Specifically, Mother failed to comply with both her FSP objectives and the orphans' court's October 31, 2012 order that would have reinstated her supervised visits with I.H.W.C. At the time of the filing of the termination petition, Mother had not seen I.H.W.C. for approximately one year. N.T., 12/17/13, at 25. The record further reflects that Mother has not maintained a stable residence during the entirety of I.H.W.C.'s lifetime. *Id.* at 24. Additionally, Mother failed to personally appear for any of the termination proceedings, nor "avail herself of court-ordered treatment…[.]" *Id.* at 23; Orphans' Court Opinion, 2/19/14, at 2.

Mother now contends that she failed to attend any of the termination proceedings because she "feared [] Father based on their past history[,]" and "should not be seen as intentionally failing to be involved" because she was barred from visitation with I.H.W.C. by the orphans' court. Mother's Brief at 9. Mother, however, fails to direct this Court to any evidence demonstrating her alleged fear of Father, and her contention is belied by the record. At the December 17, 2013 termination hearing, Attorney Glazer informed the orphans' court that Mother's absence was due to an unspecified medical issue. N.T., 12/17/13, at 2. Furthermore, the record reflects that the suspension of Mother's visitation rights with I.H.W.C. is a result of her

own conduct, and she has failed to take action to remedy the situation that led to said suspension. As noted, the orphans' court only suspended Mother's visitation rights following her volatile behavior during one of her supervised visits with I.H.W.C.. **Id.** at 23-24. Thereafter, the orphans' court directed Mother to obtain a psychological or psychiatric evaluation, but Mother failed to comply or participate in mental health treatment of any kind. **Id.** at 24-25.; **see also** Final Decree, 12/27/13, at ¶¶ 4-6. Accordingly, we conclude the record supports the termination of Mother's parental rights to I.H.W.C. pursuant to Section 2511(a)(1).

We now turn to whether the termination of Mother's parental rights to I.H.W.C. is warranted pursuant to Section 2511(b).

> Pursuant to Section 2511(b), the trial court must engage in an analysis of the best interests of the child by taking into primary consideration the developmental, physical, and emotional needs of the child. The trial court must consider intangibles such as love, comfort, security, and stability. To this end, this [C]ourt has indicated that the trial court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond.

**In re J.F.M.**, 71 A.3d 989, 997 (Pa. Super. 2013) (citations and quotation marks omitted).

"[I]n assessing the parental bond, the orphans' court is permitted to rely upon the observations and evaluations of social workers." **In re K.M.**, 53 A.3d 781, 791 (Pa. Super. 2012). "However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that

- 9 -

no bond exists." ***J.M.***, ***supra*** at 324 (citation omitted). Therefore, "the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." ***Id.***

Instantly, CYF counsel, Valerie Cammarene, Esquire (Attorney Cammarene) stated during the termination hearing that I.H.W.C. has been in the same foster home since his placement shortly after his birth, and is "meeting all the developmental milestones and is well-cared for in this home." N.T., 12/17/13, at 23, 25. With respect to the nature and status of the bond between Mother and I.H.W.C., there is no evidence that such a bond exists. As discussed, I.H.W.C. was removed from Mother's care at the time of birth in August 2012, and he has not seen Mother since October 2012, when he was approximately two-months old. ***Id.*** at 23. As such, it is reasonable to infer that no bond exists between I.H.W.C. and Mother. ***See J.M.***, ***supra***. Accordingly, we agree with the orphans' court that the termination of Mother's parental rights would best serve the developmental, physical, and emotional needs and welfare of I.H.W.C., pursuant to Section 2511(b).

Based on the foregoing, we affirm the December 27, 2013 decree involuntarily terminating Mother's parental rights to I.H.W.C. pursuant to Sections 2511(a)(1) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/26/2014</u>